**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BOBBY COWARD,

                                        Petitioner,

            v.                                              No. 11-CV-1362
                                                                  (LEK/CFH)
MARK BRADT,

                                        Respondent.
_____

**APPEARANCES:**                        **OF COUNSEL:**

BOBBY COWARD
Plaintiff Pro Se
06-B-1959
Auburn Correctional Facility
Post Office Box 618
Auburn, NY 13021


HON. ERIC T. SCHNEIDERMAN          PAUL B. LYONS, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Bobby Coward ("Coward") is an inmate currently in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS") at

Auburn Correctional Facility ("Auburn").  On July 10, 2006, the Onondaga County Supreme

Court entered a judgment of conviction against Coward after Coward pled guilty to

_____

        [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

attempted murder in the second degree on June 7, 2006. Dkt. No. 12-4 at 2; Tr. (Dkt. No. 12-15) at 232–41.[2] Coward was sentenced to a determinate term of twenty years with five years post-release supervision. Pet. (Dkt. No. 1) ¶ 1; Tr. at 242–46. Coward is presently serving that sentence.[3]

Coward now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) the indictment was "jurisdictionally defective"; (2) his plea was involuntarily and unknowingly made and the trial court failed to order a psychiatric examination to determine whether he was competent to proceed, thereby depriving him of a fair trial; (3) he received ineffective assistance of counsel; and (4) the police and prosecution engaged in misconduct. Pet. ¶¶ 12(A)–(D). Respondent opposes Coward's petition. Resp't Mem. of Law (Dkt. No. 10). Coward did not file a traverse in response to respondent's opposition. For the reasons that follow, it is recommended that the petition be denied.

# I. Background

## A. Introduction

On August 24, 2005, Coward robbed Katherine Easterly ("Easterly") at knife point in Syracuse, New York. Tr. at 195:5–200:8; Resp't Mem. of Law at 5. On September 2, 2005, Coward unlawfully entered Easterly's residence, stole money, and stabbed Clifford Grayer

---

[2] The page numbers following "Tr." refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

[3] Coward commenced service of his sentence on July 19, 2006. See DOCCS, INMATE POPULATION INFORMATION SEARCH, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (lasted visited Aug. 14, 2013).

("Grayer") with a pair of scissors. Tr. at 181:8–186:19; Dkt. No. 12-1 at 12; Resp't Mem. of Law at 5. While Grayer was hospitalized, he identified Coward as the perpetrator from a photo array. Tr. at 181:8–186:19.

On December 2, 2005, an Onondaga County grand jury charged Coward with attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25(1)), burglary in the first degree (N.Y. Penal Law § 140.30(2)), three counts of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(1)), two counts of robbery in the first degree (N.Y. Penal Law § 160.15(3)), and assault in the second degree (N.Y. Penal Law § 120.05(2)). Dkt. No. 12-1 at 12–13.

### B. Pre-Plea Proceedings

On December 5, 2005, Coward was arraigned before Onondaga County Court Judge Anthony F. Aloi. Tr. at 1. Coward personally requested that the indictment be dismissed on the ground that he was denied the opportunity to testify before the grand jury. Tr. at 5:8–14. Karin Marris, Esq. ("Marris"), Coward's assigned counsel, advised the court that Coward had wished to proceed pro se and the court adjourned the case for making a formal inquiry on Coward's legal representation. Id. at 6:1–9:25.

On December 13, 2005, Coward requested new counsel because Marris: (1) spoke negatively of Coward to the press; (2) prevented Coward from testifying before the grand jury; (3) failed to respond to Coward's phone messages; and (4) refused to move to dismiss the indictment. Tr. at 14–17:16. Even though Marris had "represented [her] client well," due to "a break down in communication," the county court relieved Marris from the case and assigned Coward another attorney, David Stanton, Esq. ("Stanton"). Id. at 17:20–20:7.

3

On February 21, 2006, based upon a review of the grand jury minutes, the county court denied Coward's counseled motion to dismiss the indictment. Tr. at 36:8–18. Stanton advised the court that Coward had "fired" him. Id. at 35:11–14. Coward explained that Stanton had refused to sign a nine-page "contract" that Coward had drafted. Id. at 37:6–14. Judge Aloi observed, "based upon my review of some of these contractual terms, . . . I don't know too many lawyers that would sign such a document like this." Id. at 37:24–38:2. Judge Aloi continued at a later time, "there's some requirements in this contract that I don't know if any lawyer could—would agree to." Id. at 59:6–8. Coward then submitted a pro se motion to dismiss for lack of "subject matter jurisdiction" based on the ineffectiveness of counsel and counsel's refusal to sign Coward's "contract." Id. at 41:7–42:22, 47:4–48:2. The county court found Coward's arguments to be legally and factually insufficient. Id. at 59:15–17.

The county court relieved Stanton from representing Coward and assessed Coward's ability to proceed pro se. Tr. at 51:24–52:6. Coward was uncooperative and refused to answer the court's questions. Id. at 52:2–56:11. The Court then determined that Coward desired to be represented by counsel and assigned Coward a third attorney, Clarence Johnson, Esq. ("Johnson"). Id. at 56:12–21.

On February 27, 2006, Coward refused to accept Johnson's representation, alleging that Johnson was unconcerned with Coward's constitutional rights and refused to sign the same contract that Coward had offered Stanton. Tr. at 66:23–67:15. The court reiterated that the law does not require assigned counsel to sign the contract and explained "there are considerable disadvantages of proceeding without an attorney." Id. at 67:23–68:1, 76:2–12. Coward renewed his motion to dismiss based on subject matter jurisdiction and ineffective

4

assistance of counsel.  Id. at 77:18–79:9.  The county court ruled that Coward's ineffective assistance claim was prematurely made.  Id. at 79:15–82:14.  The court advised that Coward would not be assigned any additional attorneys and Johnson would remain as Coward's assigned counsel.  Id. at 110:8–112:13.

On April 5, 2006, the county court summarized Coward's letters filed with the court, which stated that Coward had fired Johnson for providing ineffective assistance and refusing to sign the contract.  Tr. at 129:15–130:7, 135:20–136:7.  Coward requested new counsel and renewed his motions to dismiss.  Id. at 130:21–132:6.  Johnson submitted that he had refused to sign the contract but recognized that it was Coward's decision to either enter or not enter a plea and "intend[ed] to protect any and all of [Coward's] constitutional rights."  Id. at 135:23–136:7, 137:17–21.  The court denied Coward's motion to substitute counsel, reaffirmed its ruling that the grand jury minutes supported the indictment, denied counsel's motion to sever the last two counts of the indictment, which alleged that Coward robbed Easterly on August 24, 2005, and granted a combined Wade and Huntley hearing.[4]  Id. at 156:13–161:15.

The prosecution proceeded to ask the county court whether a psychiatric exam was necessary.  Tr. at 164:4–5.  The county court declined, ruling that Coward was "more than competent" to proceed, to which Coward stated, "thank you."  Id. at 164:6–7.  Johnson had filed a notice of intent to proffer psychiatric evidence in the event that Coward's mental

_____

[4] A Wade hearing "determine[s] if any of the identification procedures had been unduly suggestive."  Maldonado v. Burge, 697 F. Supp. 2d 516, 521 (S.D.N.Y. 2010) (citing United States v. Wade, 388 U.S. 218, 232 (1967)).  A Huntley hearing is requested to determine the voluntariness of a defendant's confession.  Rivera v. Warden, Attica Corr. Facility, 431 F. Supp. 1201, 1204 (E.D.N.Y. 1977) (citing People v. Huntley, 15 N.Y.2d 72 (1965)).

capacity became relevant in subsequent proceedings.  Id. at 164:10–18.

On May 15, 2006, the county court held a combined Wade and Huntley hearing in order to determine whether Grayer's identification of Coward from a photo-array was unduly suggestive and Coward's incriminating statements made to the police should be admissible at trial.  Tr. at 175–229.  Coward was advised of his right to appear at the hearing but refused and his suppression motions were denied.  Id. at 177:9–178:3, 221–229.

### C.  Plea-Hearing and Sentencing

On June 7, 2006, Coward appeared with Johnson before Judge Aloi and pled guilty to attempted murder in the second degree in full satisfaction of the indictment.  Tr. at 234:8–21, 239:10–20.  Coward acknowledged that he understood the plea agreement, did not receive any other promises or was forced to enter the plea agreement, waived his right to a jury trial and confront witnesses by entering the plea, and the plea was equivalent to a verdict after trial.  Id. at 234–239.

On July 10, 2006, Coward appeared with Johnson for sentencing.  Tr. at 242.  Upon Coward's guilty plea, the court sentenced Coward to a twenty-year determinate sentence with a five-year post-release supervision period.  Id. at 245:15–23.  Coward apologized to "the people that are hurt" and did not disavow the voluntariness of his plea.  Id. at 244:2.

### D.  Direct Appeal

On July 22, 2008, Coward filed a counseled direct appeal to the Appellate Division,

Fourth Department ("Appellate Division"), asserting that "the indictment failed to state a crime." Dkt. No. 12-2 at 6, 13. First, Coward argued that Count One of the indictment charging Coward with attempted murder in the second degree made "no reference to the acts or omissions or other facts constituting the crime charged[;] thus[,] rendering the count jurisdictionally defective." Id. at 17. Second, Coward argued that Count Two charging him with burglary in the second degree was defective because the indictment: (1) alleged that the burglary took place "on or about" September 2, 2005; (2) did not name Coward; and (3) did "not state what facts constituted or how . . . [Coward] caused physical injury to Grayer." Id. at 17–18. Lastly, Coward claimed that Counts Three through Eight "fail[ed] to name . . . [Coward] or specify what dangerous instrument" was employed, and that the date of the alleged crime was uncertain. Id. at 24.

On February 6, 2009, the Appellate Division unanimously affirmed the judgment of conviction. People v. Coward, 59 A.D.3d 988, 988 (4th Dep't 2009). The Appellate Division found, "[e]ven assuming, arguendo, that . . . [Coward's] challenge is jurisdictional in nature and thus is properly before us, . . . that it is 'a nonwaivable jurisdictional prerequisite to a criminal prosecution' . . . we conclude that the count to which defendant pleaded guilty provided him 'with fair notice of the nature of the charge[] against him and the time and place of the conduct, so as to enable him to prepare an adequate defense.'" Id. (citations omitted).

On February 11, 2009, Coward filed a counseled application for leave to appeal to the New York Court of Appeals ("Court of Appeals") on the issue of "whether the indictment should be dismissed for failure to state a crime." Dkt. No. 12-5 at 2–3. On April 17, 2009, the Court of Appeals denied Coward's leave application. People v. Coward, 12 N.Y.3d 815,

7

815 (2009).

## E. New York Criminal Procedure Law ("CPL") § 440.10
## Motion to Vacate the Conviction

In an uncounseled motion dated March 29, 2010, Coward moved to vacate his

conviction pursuant to CPL § 440.10.[5]  Dkt. No. 12-8.  Coward raised a number of claims.

First, Coward argued that he received ineffective assistance of trial counsel because (1)

counsel prevented him from testifying before the grand jury and failed to challenge the

indictment based on such conduct, (2) Johnson failed to pursue a court-ordered psychiatric

examination for Coward, and (3) Marris and Johnson did not act in Coward's best interest.

---

[5]  This statute, in relevant part, states

> At any time after the entry of a judgment, the court in which it
> was entered may, upon motion of the defendant, vacate such
> judgment upon the ground that:
>
> (a) The court did not have jurisdiction of the action or of the
> person of the defendant; or
>
> (b) The judgment was procured by duress
>
> . . .
>
> (e) During the proceedings resulting in the judgment, the
> defendant, by reason of mental disease or defect, was
> incapable of understanding or participating in such
> proceedings; or
>
> . . .
>
> (h) The judgment was obtained in violation of a right of the
> defendant under the constitution of this state or of the United
> States . . .

N.Y. CRIM. PROC. LAW §440.10(1).

Id. at 3, 5–6. Second, Coward argued that the court deprived him of his due process rights by assigning Johnson as Coward's attorney over Coward's objections, acting with bias against Coward, denying Coward a mental competency hearing, and threatening Coward with the maximum sentence for proceeding with a trial. Id. at 3–4, 7–8, 13. Third, Coward argued that his guilty plea was involuntarily and not knowingly entered, thereby depriving him of a fair trial, the prosecution threatened to press unrelated charges against him if he were to go to trial, counsel was ineffective, and the court failed to properly explain the plea agreement to him. Id. at 4, 17–18. Fourth, Coward argued that the prosecution knowingly allowed perjured witnesses, who were police officers, to testify at the Wade/Huntley hearing, the prosecution and police expressed personal opinions about Coward's guilt, and the prosecution failed to disclose evidence favorable to the defense. Id. at 4, 15–16.

In a Decision and Order dated July 21, 2011, Judge Aloi denied the § 440.10 motion in its entirety. Dkt. No. 12-11. The court found all of Coward's claims were procedurally barred under CPL § 440.10(2)(c)[6] because Coward could have, but did not, raise the claims

---

[6] The New York Criminal Procedure Law provides that

> [T]he court must deny a motion to vacate a judgment when:
>
> . . .
>
> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .

N.Y. CRIM. PROC. LAW § 440.10(2)(c).

on direct appeal.  Id. at 4–5 (citing inter alia People v. Hernandez, 191 A.D.2d 511, 512 (2d Dep't 1993), People v. Pachay, 185 A.D.2d 287, 287) (2d Dep't 1992)).  In addition, the court found all claims were without merit.  Id. at 6–12.

On August 23, 2011, Coward filed a motion for leave to appeal the § 440.10 motion, presenting claims of ineffective assistance of counsel, prosecutorial misconduct, and an involuntary plea.  Dkt. No. 12-12 at 1–28.  On November 1, 2011, the Appellate Division denied Coward's motion for leave to appeal.  Dkt. No. 12-14.


## F.  The Petition Before the Court

On November 18, 2011, Coward filed a pro se habeas corpus petition asserting the following claims:  (1) the indictment was "jurisdictionally defective" because Coward was denied the right to testify before the grand jury and the indictment was vague (Pet. ¶ 12(A)); (2) Coward's plea was not knowingly and voluntarily entered because Coward was threatened with the maximum sentence had he proceeded to a trial and the trial court failed to order a psychiatric examination to determine whether Coward was competent to proceed (Id. ¶¶ 12(B), (D), (F)); (3) Coward received ineffective assistance of counsel because counsel failed to move to dismiss the indictment on the ground that Coward was prevented from testifying before the grand jury and counsel had a conflict of interest in representing Coward (Id. ¶ 12(C)); (4) the police and prosecution engaged in misconduct when the prosecution threatened to press unrelated charges against Coward and police officers committed perjury at unspecified proceeding or proceedings.  Id. ¶ 12(E).

## II. Exhaustion[7]

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); <u>Shabazz v. Artuz</u>, 336 F.3d 154, 160 (2d Cir. 2003) (quoting <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001)). Specifically, 28 U.S.C. § 2254(b)(1)(A) & (B) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

<u>Id.</u>

---

[7] Respondent concedes that Coward's petition was timely filed. Resp't Mem. of Law at 17–18. Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), the one-year time period for filing a federal habeas corpus petition starts to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); <u>Cook v. N.Y. State Div. of Parole</u>, 321 F.3d 374, 279–80 (2d Cir. 2003). A judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court. <u>Epps v. Poole</u>, 687 F.3d 46, 49 (2d Cir. 2012) (citations and footnote omitted). Here, the Court of Appeals denied Coward leave to appeal on April 17, 2009; thus, Coward's time to seek a writ of certiorari expired on July 16, 2009. Coward had until July 16, 2010 to file his petition. However, the time limitation period was tolled while the § 440.10 motion was pending. <u>Fernandez v. Artuz</u>, 402 F.3d 111, 112–15 (2d Cir. 2005). The limitation period ran for 256 days from when the conviction became final on July 16, 2009 through March 29, 2010, when Coward filed the § 440.10 motion. The limitation period was tolled until November 1, 2011, when the Appellate Division denied leave to appeal the § 440.10 decision. The limitation period ran for fifteen days from November 1, 2011 until November 16, 2011, the date on the federal habeas petition. Thus, the petition was timely filed because the limitation period ran for a total of 271 days.

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). State remedies are "properly exhausted" when the petitioner has "fairly presented" to the state court, O'Sullivan, 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir. 1982) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194. In addition, the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. See O'Sullivan, 526 U.S. at 847–48; Brown v. Senkowski, 152 F. App'x 15, 17 (2d Cir. 2005). The petitioner bears the burden of proving exhaustion. Colon v. Johnson, 19 F. Supp. 2d 112, 119–20 (S.D.N.Y. 1998) (citations omitted).

In this case, it is uncontested that the majority of Coward's claims were exhausted. Coward partially exhausted his defective-indictment claim by presenting to the state court

his defective-indictment claim based on the vagueness of the indictment in his direct appeal. While Coward brought forth the grand jury testimony issue under an ineffective assistance of counsel claim in his §440.10 motion, he has failed to present it as a defective-indictment claim to a state court. Thus, Coward's defective-indictment claim is partially unexhausted.

A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases); Aparicio, 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). Here, Coward cannot return to state court with his unexhausted claim because he had already sought direct appeal of his conviction. Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir. 1991); People v. Spence, 82 N.Y.2d 671, 671 (1993); NEW YORK COMP. CODES, R. AND REG. tit. 22, §§ 600.8(b), 500.10 (2012). Coward is also barred from raising that claim in a state writ of habeas corpus because he could have raised it on direct review as the defective-indictment claim is record-based. See Sweet v. Bennett, 353 F.3d 135, 139–41 (2d Cir. 2009); N.Y. CRIM. PROC. LAW § 440.10(2)(c) (barring review if a claim could have been raised on direct appeal). As a result, Coward's unexhausted claim is deemed exhausted.

A claim that is deemed exhausted because state remedies are no longer available to the petitioner may avoid the procedural bar if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

13

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted); Ramirez v. Attorney General of New York, 280 F.3d 87, 94 (2d Cir. 2001); Aparicio, 269 F.3d at 90. "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. Levine, 44 F.3d at 127 (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003).

Here, neither cause and prejudice nor a miscarriage of justice is present in the record. There is nothing in the record indicating that an objective and external factor impeded Coward's efforts in raising his claims in state court. Ineffective assistance of counsel constitute cause and to successfully allege it the petitioner must raise it as a separate and meritorious claim. Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000). While Coward raised ineffective assistance of trial counsel as a separate claim, as discussed infra, he has failed to demonstrate that the claim is meritorious. Further, as discussed infra, Coward's ineffective assistance claim is also procedurally barred. Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim of cause for procedural default is not itself excepted from the doctrine of procedural default. Thus, a petitioner may not bring an ineffective assistance claim as a cause for a default when the ineffective assistance claim itself is procedurally barred." (citation omitted)). Thus, Coward has failed to establish cause for overcoming the procedural bar. Because cause is not established, the Court does not need to reach the inquiry on prejudice. Horton v. Ercole, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (citations

14

omitted). As for the fundamental miscarriage of justice, Coward does not allege new evidence tending to establish his actual innocence. Thus, Coward's unexhausted claim is deemed exhausted and procedurally defaulted.

Accordingly, Coward's defective-indictment claims are barred from federal habeas review.

### III. Adequate and Independent State Law Grounds

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also Harris v. Reed, 489 U.S. 255, 261–62 (1989); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." Coleman, 501 U.S. at 729 (citation omitted). "Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, . . . such reliance on state law must be clear from the face of the opinion." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (internal quotation marks omitted) (citing Coleman, 501 U.S. at 732, 735). Thus, the mere existence of a state procedural default is not enough, as the Supreme Court explained,

the state court must actually have relied on the procedural bar as

15

> an independent basis for its disposition of the case. Moreover,
> we will not assume that a state-court decision rests on adequate
> and independent state grounds when the state court decision
> fairly appears to rest primarily on federal law, or to be interwoven
> with the federal law, and when the adequacy and independence
> of any possible state law ground is not clear from the face of the
> opinion.

Caldwell v. Mississippi, 472 U.S. 320, 327 (1985) (internal quotation marks and citations omitted).

In addition to being "independent," the state procedural bar must also be "adequate." Cotto, 331 F.3d at 239. Adequacy requires a state procedural ground that is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (citations omitted). A violation of such "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review. Cotto, 331 F.3d at 239–40 (internal quotation marks omitted). In an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied
> on in the trial court, and whether perfect compliance with the
> state rule would have changed the trial court's decision; (2)
> whether state caselaw indicated that compliance with the rule
> was demanded in the specific circumstances presented; and (3)
> whether petitioner had "substantially complied" with the rule
> given "the realities of trial," and, therefore, whether demanding
> perfect compliance with the rule would serve a legitimate
> governmental interest.

Id. at 240. A claim that is procedurally defaulted due to an adequate and independent state law ground may also avoid the procedural bar if the petitioner shows cause for the default and actual prejudice, or a miscarriage of justice will result if the claims are not considered.

16

Coleman, 501 U.S. at 750; DiGuglielmo, 366 F.3d at 135.

In this case, Coward's involuntary plea, ineffective assistance of trial counsel, and police and prosecutorial misconduct claims are procedurally defaulted pursuant to an independent and adequate state law grounds. Coward claimed that his plea was not voluntarily made because he was threatened with the maximum sentence if he proceeded with trial and the trial court failed to order a psychiatric examination to determine whether he was competent to proceed. Coward further asserted that the trial court used duress to compel the guilty plea, which in turn deprived him of a fair jury trial. The supreme court expressly denied Coward's involuntariness claim on procedural grounds under CPL § 440.10(3)(a),[8] "because such claim could have been preserved for direct review on direct appeal with due diligence by [Coward]." Dkt. No. 12-11 at 8–11. The supreme court continued, "[Coward] could have made a motion to withdraw his plea of guilty before sentencing, which occurred over a month after [Coward] . . . entered the plea . . . ." Id. at 10. Coward could also have filed his § 440.10 motion before filing a direct appeal. Thus,

---

[8] New York Criminal Procedure Law provides

> Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when:
> (a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal.

N.Y. CRIM. PROC. LAW § 440.10(3)(a).

Coward's involuntary plea claim is procedurally barred. The supreme court denied

Coward's police and prosecutorial misconduct claim pursuant to the same state statute.

The supreme court reasoned that "[i]t was fully within [Coward's] . . . ability to discover and

raise the issue of the prosecution allowing perjurious testimony at the Grand Jury hearing at

the trial court level. Furthermore, [Coward] . . . could have preserved this issue for review

had he raised such issue at the trial court level." Dkt. No. 12-11 at 12. Section 440.10(3)(a)

constitutes an adequate and independent state law ground. Witt v. Racette, No.

10-CV-9180 (JPO), 2012 WL 3205177, at *8 (S.D.N.Y. Aug. 7, 2012) (citation omitted).[9]

Therefore, the Court is prevented from reviewing these claims.

As for Coward's ineffective assistance of trial counsel claim, the supreme court denied

that claim pursuant to § 440.10(2)(c) because the claim was based on facts in the record

and Coward could have, but did not, raise the claim on direct appeal. Dkt. No. 12-11 at 5.

The supreme court found Coward had used the § 440.10 motion "as a secondary vehicle of

appeal because he has not alleged any new facts, and he instead merely relies on the facts

that appear in the trial court record." Id. at 6. CPL § 440.10(2)(c) has been recognized as a

firmly established and regularly followed state procedural rule. Clark v. Perez, 510 F.3d

382, 390–92 (2d Cir. 2008) ("It was therefore error to hold that . . . [§ 440.10(2)(c)] was not

"adequate" to bar federal review of [the] . . . petition."); see also Reyes, 118 F.3d at 139.

Thus, these three claims are barred by an adequate and independent state law ground.

While Coward raised ineffective assistance of trial counsel as a separate claim, the claim is

procedurally barred and Coward has failed to demonstrate that the claim is meritorious, as

---

[9] All unpublished opinions cited to by the Court in this Report-Recommendation
are, unless otherwise noted, attached to this Recommendation.

discussed infra.  Thus, Coward has failed to establish cause for overcoming the procedural bar.  Because cause is not established, the Court does not need to reach the inquiry on prejudice.  Horton v. Ercole, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (citations omitted).  Further, Coward makes no attempt to show a miscarriage of justice.  Thus, Coward's claims are procedurally barred by adequate and independent state law grounds.

Accordingly, Coward's involuntary plea, ineffective assistance of trial counsel, and police and prosecutorial misconduct claims are procedurally defaulted and barred from federal habeas review.


## IV. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition.  Rhines v. Weber, 544 U.S. 269, 271 (2005).  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."  Rhines, 544 U.S. at 275.  The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on good cause.  Id. at 277.  However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless.  Id. (citation omitted).  Here, Coward has not provided good cause for his failure to exhaust his claims.  As such, Coward has failed to meet the Rhines stay-and-abeyance standard of demonstrating good cause and raising a colorable claim.  Moreover, as discussed infra, all of Coward's claims,

19

both exhausted and unexhausted, are meritless.  Thus, although the habeas petition

includes both exhausted and unexhausted claims, this Court may review their merits.

## V.  Merits

### A.  Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,

110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if

the state court's adjudication on the merits

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000); Hawkins v. Costello, 460

F.3d 238, 242 (2d Cir. 2006); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005).

The Supreme Court has given independent meaning to the "contrary to" and

"unreasonable application" clauses in § 2254(d)(1).  Williams, 529 U.S. at 405.  "Under the

'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  Id. at 412–13.  As for the "unreasonable application" clause, a writ

may be granted if "the state court's application of clearly established federal law was

objectively unreasonable."  Id. at 409, 413.  "[A]n unreasonable application of federal law is

different from an <u>incorrect</u> application of federal law." <u>Id.</u> at 410. In addition, the statutory phrase "clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions . . . ." <u>Id.</u> at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>see</u> <u>also</u> <u>Smalls v. Batista</u>, 191 F.3d 272, 278 (2d Cir. 1999); <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>DeBerry</u>, 403 F.3d at 66.


## B. Defective-Indictment

Even if this Court were to review Coward's claims that the indictment was "jurisdictionally defective," such claims are without merit. The Appellate Division reviewed the merits of Coward's claim based on the indictment's vagueness and concluded that the indictment gave Coward fair notice of the nature of the charge as well as the time and place of the conduct. First, it is well-settled that alleged deficiencies or errors in state grand jury proceedings are not cognizable on habeas corpus review. <u>Davis v. Mantello</u>, 42 F. App'x 488, 490 (2d Cir. 2002) (citing <u>inter</u> <u>alia</u> <u>Lopez v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are <u>a</u> <u>fortiori</u> foreclosed in a collateral attack brought in a federal court.")). Further, "a defendant's right to testify before the grand jury is not a federal constitutional right" but "a statutorily created right"; thus,

Coward's defective-indictment claim based on testifying before the grand jury is not cognizable on federal habeas review. <u>Lucius v. Filion</u>, 431 F. Supp. 2d 343, 346 (W.D.N.Y. 2006)

Second, assuming these claims are cognizable, Coward waived the defective-indictment claims by pleading guilty when he "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . ." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Canal v. Donelli</u>, No. 06-CV-1490 (TJM/DRH), 2008 WL 4287385, at *3 (N.D.N.Y. Sept. 17, 2008) ("an unconditional guilty plea waives all claims . . . relating to events prior to the guilty plea that did not affect the voluntariness of the plea" (citations omitted)); <u>see</u> <u>also</u> <u>Ariola v. LaClair</u>, No. 07-CV-57 (GLS/VEB), 2008 WL 2157131, at *12–13 (N.D.N.Y. Feb. 20, 2008) ("[A] defendant's guilty plea cured any possible deficiency in the grand jury proceeding." (collecting cases)). Since Coward's claims concerning his testimony before the grand jury and the specificity of the indictment do not attack the voluntariness of his plea, such claims are barred from habeas review.

Furthermore, the indictment against Coward for attempted murder in the second degree was not vague. "It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" <u>United States v. Alfonso</u>, 143 F.3d 772, 776 (2d Cir. 1998) (citing <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974)). Nevertheless, "[a]n

indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet." United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975) (citation omitted). The indictment only needs to track the language of the statute charged, stating the approximate time and place of the alleged crime. Id. (citations omitted). Here, the indictment that identified Coward as the sole defendant states,

> The grand jury of the County of Onondaga . . . accuses Bobby M. Coward of the crime of attempted murder in the second degree in violation of Section 110.00/125.25(1) of the Penal Law of the State of New York committed as follows: The said Bobby M. Coward on or about the 2nd day of September, 2005 at the City of Syracuse, in this county, attempted to intentionally cause the death of Clifford Grayer.

Dkt. No. 12-1 at 12. Section 110.00 of the New York Penal Law states, "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. CRIM. PROC. LAW § 110.00. Section 125.25(1) of the New York Penal Law states, "[a] person is guilty of murder in the second degree when with intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. CRIM. PROC. LAW § 125.25(1).

Here, the indictment was sufficiently specific. The indictment notified Coward of the approximate time and place of the attempted murder, which was on or about September 2, 2005[10] and in Syracuse, New York, the crime charged against him requires an "intentional" mental state, and the name of the alleged victim. Tramunti, 513 F.2d at 1113. Further,

---

[10] The New York Criminal Procedure Law § 200.50(6) states, "An indictment must contain . . . [a] statement in each count that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time . . . ." N.Y. CRIM. PROC. LAW § 200.50(6) (emphasis added).

23

Coward's name appears in the indictment's caption, which provided sufficient notice to Coward that the indictment was made against him. Harris v. Burge, No. 01-CV-5066, 2008 WL 772568, at *6 n.2 (S.D.N.Y. Mar. 25, 2008). Thus, "[Coward] has failed to demonstrate that there was an error of state law, let alone an error of federal constitutional law." Mills v. Poole, No. 06-CV-842A, 2008 WL 2699394, at *15 (W.D.N.Y. 2008). Given the non-cognizable nature of these defective-indictment claims, Davis, 42 F. App'x at 490, Coward's waiver of these claims by pleading guilty, Tollett, 411 U.S. at 267, and the indictment was sufficiently specific, the state court's determination of Coward's defective-indictment claims was neither contrary to or an unreasonable application of Supreme Court precedent and it is not an unreasonable determination of the facts.

Accordingly, Coward's petition on these claims should be denied.

## C. Involuntary Plea

Coward's claim based on the voluntariness of his plea is without merit. Coward argued that his plea was not knowingly and voluntarily made because he was threatened with the maximum sentence if he decided to proceed with trial and the trial court failed to order a psychiatric examination under CPL § 730[11] to determine whether Coward was competent to

---

[11] Section 730.30(1) of the New York Criminal Procedure Law states

> At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.

proceed.  The county court denied the claim on the merits, reasoning that Coward engaged in an extensive plea colloquy with the trial court which demonstrated that Coward was not coerced into pleading guilty.  Dkt. No. 12-11 at 10–11.

"When evaluating the voluntariness of a guilty plea, a habeas court must examine the totality of the circumstances surrounding that plea."  Joseph v. Fischer, No. 02-CV-4809, 2003 WL 68032, at *5 (S.D.N.Y. Jan. 7, 2009) (citing Henderson v. Morgan, 426 U.S. 637, 644–45 (1976)).  The Court asks "whether the accused understand[s] the nature of the constitutional protections that he is waiving and whether his admission can stand as an intelligent admission of guilt."  Id. (quoting Henderson, 426 U.S. at 645 n.13 (internal quotation marks omitted)).

Here, the record belies Coward's claims.  Coward failed to proffer any record evidence to support the claim that the county court threatened to impose the maximum sentence if he did not plead guilty.  Conversely, at the plea hearing, the county court asked, "[h]as anyone forced you or threatened you to enter into this plea bargain agreement?"  Dkt. No. 12-15 at 237.  Coward answered, "[n]o, they didn't."  Id. at 238.  Such "[s]olemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face fo the defendant's later attempt to contradict them." (internal quotation marks and citations omitted)).  This presumption may be rebutted by "a substantial reason" to find otherwise and Coward has presented no such

N.Y. CRIM. PROC. LAW § 730.30(1).

reason.  <u>United States v. Juncal</u>, 245 F.3d 166, 171 (2d Cir. 2001) ("This [plea agreement] testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligent made." (citations omitted)).

Assuming the county court referred to Coward's maximum potential sentence during the plea allocution, thus creating a "discouraging effect on . . . [Coward's] assertion of his trial rights," these circumstances are "an inevitable and permissible attribute of any legitimate system which tolerates and encourages the negotiation of pleas." <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978) (quoting <u>Chaffin v. Stynchcombe</u>, 412 U.S. 17, 31 (1973)). Accordingly, the county court's decision on the merits of Coward's involuntary plea based on alleged sentencing threats was neither contrary to, or involved an unreasonable application of clearly established Supreme Court precedent, nor was it an unreasonable application of the facts.

Coward's involuntary plea claim based on his alleged incompetence at the time of the plea allocution is also without merit.  "A criminal defendant may not be tried unless he is competent, and he may not . . . plead guilty unless he does so competently and intelligently." <u>Godinez v. Moran</u>, 509 U.S. 389, 396 (1993) (internal quotation marks and citations omitted)).  In determining whether a defendant was competent to stand trial, the court asks "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." <u>Id.</u> (internal quotation marks and citations omitted).  This standard also applies to determining a defendant's competence to plead

guilty. Id. at 398. "[S]ome degree of mental illness cannot be equated with incompetence to stand trial." United States v. Nichols, 56 F.3d 403, 412 (2d Cir. 1995). For example, the Supreme Court has found where a defendant who suffered from schizophrenia could be forced to be represented at trial despite the defendant was sufficiently competent to stand trial or enter plea. Indiana v. Edwards, 554 U.S. 164, 167–78.

Here, the county court found that a § 730 competency hearing was unnecessary as "there was no factual basis for the Court to have a bona fide doubt about" Coward's competence. Dkt. No. 12-11 at 8–9. Coward "was coherent and responsive to the Court, and . . . [Coward] did not request a competency hearing at any time" but rather "thanked the Court when a competency hearing was denied. Id. at 9. Coward has failed to proffer any evidence to rebut the county court's findings and the county court's "competency determination is a factual finding entitled to a presumption of correctness." Musumeci v. N.Y.S. Dep't of Corr., No. 07-CV-6384 (MAT)(VEB), 2010 WL 2287486, at *4 (W.D.N.Y. June 1, 2010) (citations omitted). The county court's decision on Coward's involuntary plea claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Thus, Coward's entire involuntary plea claim is without merit.

Accordingly, Coward's petition on this claim should be denied.


### D. Ineffective Assistance of Trial Counsel

Coward contends he received ineffective assistance of counsel because counsel failed to file a motion to dismiss the indictment for being prevented from testifying before the grand jury and counsel had a conflict of interest in representing Coward. However, such claims are not cognizable on federal habeas review.

27

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). To prevail on this claim, petitioner must satisfy a two-prong test showing that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" requires petitioner to show that counsel's performance "fell below an objective standard of reasonableness." Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 688). "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. Premo v. Moore, __ U.S. __, 131 S. Ct. 733, 740 (2011) (collecting cases). A federal habeas court must not equate unreasonableness under Strickland with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable . . . [but it is] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. Here, Coward has failed to establish that the state courts unreasonably applied Supreme Court precedents.

First, Coward's grounds for the ineffective claim, that counsel had a conflict of interest and also failed to move to dismiss the indictment, do not relate to the voluntariness of

Coward's plea and are barred by Tollett. Canal v. Donelli, No. 06-CV-1490, 2008 WL 4287385, at *3 (N.D.N.Y. 2008) (rejecting, pursuant to Tollett, the claim that counsel failed to call petitioner to testify before the grand jury).

Second, trial counsel's overall performance did not fall below an objective standard of reasonableness and was not deficient. Coward does not explain how counsel had a conflict of interest such that he should be removed from the case. Further, Coward does not show how he was prejudiced by counsel's performance or how testifying before the grand jury would have altered the outcome of the case. "New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel." Davis v. Mantello, 42 F. App'x 488, 491 n.1 (2d Cir. 2002) (citations omitted). Conversely, trial counsel filed a number of motions on Coward's behalf. Dkt. No. 12-11. Further, counsel represented Coward in a Wade/Huntley hearing. Moreover, Coward received an advantageous plea agreement in which he pled guilty to only one crime in full satisfaction of the indictment and was sentenced only for one count of the indictment. Thus, a reasonable argument is made that trial counsel provided meaningful representation.

Accordingly, Coward's petition on this claim should be denied.

## E. Police and Prosecutorial Misconduct

Finally, Coward's police and prosecutorial misconduct claims are also without merit. Coward contends that the police and prosecution engaged in misconduct where the police officers committed perjury at the Wade/Huntley hearing and prosecution threatened to press unrelated charges against Coward. As discussed supra, to the extent Coward alleged that

misconduct occurred at grand jury proceedings, such claims are not cognizable on habeas review. Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (relying on United States v. Mechanik, 475 U.S. 66 (1986)). This includes prosecutorial misconduct. Alston v. Ricks, No. 01-CV-9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 3, 2003). Further, Coward does not allege that the misconduct affected the voluntariness of his guilty plea. Thus, these claims are barred under Tollett. Moreover, Coward does not proffer anything more than conclusory allegations to support his claim. Coward does not allege which witness had committed perjury during which proceeding or what perjurious statements were made. The supreme court found Coward's misconduct claim to be "without merit and unsupported by any evidence or affidavits." Dkt. No. 12-11 at 12.

Accordingly, Coward's motion on this claim should be denied.

## VI. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Coward's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**. It is further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Coward's claims as Coward has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  August 19, 2013
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge